ATTORNEYS AT LAW

125 BROAD STREET, 39TH FLOOR   NEW YORK, NEW YORK 10004-2400

www.sedgwicklaw.com   212.422.0202 *phone*   212.422.0925 *fax*

# Sedgwick LLP

*Joseph Powers*
*(212) 898-4042*
*joseph.powers@sdma.com*

June 21, 2011

The Hon. Richard J. Holwell
District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York  10007

Re: *The City of New York v. American Motorists Insurance Company, et ano.*

    Civ. Action No.    : 1:11-cv-03304-RJH
    Our File No.      : 01560-007740

Dear Judge Holwell:

We represent the defendant Westchester Fire Insurance Company ("Westchester") in the above action. We write this letter pursuant to Section 3.A. of your Individual Practice Rules for the purpose of requesting a pre-motion conference with the Court seeking your consent to file a motion to dismiss the complaint as against Westchester based upon late notice of the occurrence, claim and suit by the City of New York (the "City").

As noted in the Amended Verified Complaint filed by the City, in or around July 1993 the City allegedly entered into a contract with Diamond Asphalt Corporation ("Diamond") for the reconstruction of a portion of the Boston Road in the Bronx (FAC, ¶ 7). On November 17, 1996, Ruben Rivera allegedly was injured while crossing the Boston Road between Thwaites Place and Pelham Parkway when he was struck by a motor vehicle operated by Levi Walton (FAC, ¶ 15). At the time of the accident, Diamond had a primary CGL policy issued by the defendant Carlisle Insurance Company ("Carlisle") with a limit of $1,000,000 per occurrence and an excess liability policy with Westchester with a limit of $5,000,000 per occurrence (FAC, ¶¶ 9, 12).

The City concedes that it was served with a notice of claim by Rivera on February 14, 1997 (FAC, ¶ 21). It further admits that it was served with a summons and complaint in the *Rivera* Action on February 13, 1998 (FAC, ¶ 16). The City characterizes the complaint in the *Rivera* Action as alleging that the roadway where Rivera was injured was under construction, causing a number of defects and deleterious conditions to exist, including raised manhole covers, inadequate illumination, lack of lane markings, lack of barricades, signage, barrels, cones and warnings, and lack of temporary lighting to illuminate the construction area. The City contends that the underlying complaint sought to hold it liable for these defects, along with Diamond and other defendants in the *Rivera* Action (FAC, ¶ 17).

The Hon. Richard J. Holwell D. J.
Re: The City of New York v. American Motorists Insurance Company, et ano.
June 21, 2011
Page 2

The City alleges that it is an additional insured under the Westchester excess policy (FAC, ¶ 14). The City's alternate contention that it is a named insured under the excess policy is belied by the policy itself (FAC, ¶ 13). Condition E. (2) of the Westchester excess policy, as amended by the State of New York Amendatory Endorsement, provides that "[y]ou must notify us of any "Occurrence" which may result in a "Claim" or "Suit" under this policy." The term "Occurrence" is defined, in pertinent part, as '[a]n accident". The term "Claim" is defined, in pertinent part, as "any demand upon the 'Insured' for monetary compensation." The term "Suit" is defined, in pertinent part, as "a civil proceeding in which damages, because of 'Bodily Injury' ... are alleged". The policy further provides that '[i]f a 'Claim' is made or 'Suit' is brought against any 'Insured' that is likely to involve this policy, you must notify us, in writing, of the 'Claim' or 'Suit' as soon as possible." Accordingly, the City became aware of the "Occurrence" and "Claim" no later than February 14, 1997 and knew that a "Suit" was brought against the City by Rivera no later than February 13, 1998.

When the City was sued in the *Rivera* Action in February 1998, the complaint sought damages of $10,000,000 for Rivera's alleged personal injuries and $2,000,000 for his wife's loss of consortium. Furthermore, in a verified bill of particulars filed on June 19, 1998, Rivera alleged that, as a result of the accident, he had suffered: (a) a fractured skull; (b) multiple facial fractures; (c) damage to his optic nerves resulting in impaired vision and requiring orbital surgery; (d) cerebral lacerations, contusions, subdural hematomas and associated hemorrhaging; (e) post concussion syndrome; (f) compound fractures of the right tibia and fibula requiring surgical pinning; (g) shortening of the right leg and limping gait; (h) severe sprain of the right ankle; (i) fractures to five ribs on the right side; (j) laceration of the liver; (k) severe sprains of the surgical spine with radiculopathy at C5-C6; (l) sprains of the thoracic and lumbo-sacral spine; (m) sprains of the right wrist and forearm; (n) and an inability to use his right thumb. Rivera contended that he was confined to Jacobi Medical Center from November 17 to December 6, 1996 and thereafter to bed and home until June 7, 1997. He claimed loss of earnings at that time of $22,400 and hospital and medical expenses of $80,000.

The City alleges that it placed Carlisle on notice of the claim under the primary policy on or around February 24, 1997 (FAC, ¶ 22). The City's complaint mentions nothing about attempting to provide notice to Westchester at that time. The City did not notify Westchester that it was demanding coverage under the excess policy until March 14, 2011 – over 14 years after the City first received notice of the Riviera occurrence and claim (FAC, ¶ 34). Westchester disclaimed coverage to the City based on late notice of the occurrence, claim and suit on April 1, 2011 (FAC, ¶¶ 35-37).

New York law will govern this coverage dispute. Diamond is a New York corporation with its principal place of business in Brooklyn, New York, the excess policy was placed by a New York broker, was issued to Diamond at its New York address and the road construction project where the accident occurred was in the New York. Empire Fire and Marine Ins. Co. v. H. Moran & Sons, Inc., No. 00-cv-6261, 2003 WL 22901060 (E.D.N.Y. Dec. 5, 2003) (citing Zurich Ins. Co. v. Shearson Lehman, Hutton, Inc., 84 N.Y.2d 309, 618 N.Y.S.2d 609 (1994)).

Under New York law, an additional insured, such as the City, has an independent obligation to provide a liability insurer with notice of an occurrence, claim or suit. Structure Tone, Inc. v. Burgess Steel Prods. Corp., 249 A.D.2d 144, 145, 672 N.Y.S.2d 33 (1st Dep't 1998); City of New York v. Welsbach Electric Corp., 49 A.D.3d 322, 582 N.Y.S.2d 134 (1st Dept. 2008); Travelers Ins. Co. v. Volmar Constr. Co., 300 A.D.2d 40, 44, 752 N.Y.S.2d 286 (1st Dept. 2002); 23-08-18 Jackson Realty Assoc. v. Nationwide Mutual Ins. Co., 53 A.D.3d 541, 542-43, 863 N.Y.S.2d 35 (2nd Dept. 2008). In order for notice to be effective, it

The Hon. Richard J. Holwell D. J.
Re: The City of New York v. American Motorists Insurance Company, et ano.
June 21, 2011
Page 3

must clearly convey to the insurer that the additional insured is tendering its defense and/or indemnity. Liberty Ins. Underwriters Inc. v. Great American Ins. Co., No. 09-cv-4912, 2010 WL 3629470 (S.D.N.Y. 2010); Travelers Ins. Co. v. Volmar Const. Co., Inc., supra.

It is well settled that an insured's failure to satisfy notice requirements under a primary policy is a breach of a condition precedent and a complete defense to coverage, even if the insurer has not suffered prejudice. This standard also applies to excess insurers, who have the same "vital interest in prompt notice as do primary insurers" because they too have "the right to investigate claims and to participate in settlement negotiations" and "make their own settlement determinations" based on their individual risk assessments. Am. Home Assur. Co. v. Int'l Ins. Co., 90 N.Y.2d 433, 440, 443, 991 N.Y.S.2d 584 (1997); Olin Corp. v. American Re-Insurance Co., 74 Fed.Appx. 105, 2003 WL 22048230 (2d Cir. 2003).

Here, the City was required to provide notice of occurrence under the Westchester excess policy where the occurrence "may result in a 'Claim' or 'Suit' under this policy." It has been held that a complaint demanding damages in excess of a primary limit is insufficient, standing alone, to trigger an obligation to notify an excess insurer of the occurrence, claim or suit where the complaint contains "only vague or generalized allegations of injury without any particularity or substantiation." Morris Park Contracting Corp. v. Nat. Union Fire Ins. Co. of Pittsburgh, P.A., 33 A.D.3d 763, 765, 822 N.Y.S.2d 616 (2d Dept 2006) (where, as here, the ad damnum demanded $10 million and the primary limit was $1 million). On the other hand, where a bill of particulars demonstrates that the potential loss could exceed the primary limit, "it is the combination of the ad damnum figure and the evidence regarding the seriousness of the injuries which triggers [the] obligation [to provide timely notice]." Morris Park, supra.

Here, the complaint in the *Rivera* Action alleged that the plaintiff was essentially mowed down on a public roadway and had suffered substantial injuries for which he sought $10 million in damages. Rivera's bill of particulars (served in June 1998), outlined the serious and substantial nature of his injuries and demonstrated that the Rivera claim had the potential to exceed the $1 million limit of the Carlisle primary policy. The limits were in fact exhausted in September 2006, when Rivera settled with Diamond alone for $1.3 million. The City's delay in waiting until March 2011 to tender its claim as an "additional insured" under the Westchester excess policy was late as a matter of law.

Very truly yours,

Joseph K. Powers (JKP-5504)
Sedgwick LLP

JKP/jkp

cc:   Ari Biernoff, Esq.
      Steven J. Fried, Esq.

NY/703987v1