UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

THE CITY OF NEW YORK,

                                                    Plaintiff,

                  -against-                                    11-CV-3304 (RJH)

AMERICAN MOTORISTS INSURANCE COMPANY, as     **SECOND AMENDED**
successor in interest to CARLISLE INSURANCE              **COMPLAINT**
COMPANY, and WESTCHESTER FIRE INSURANCE
COMPANY,

                                               Defendants.

------------------------------------------------------------------------ x

Plaintiff, The City of New York ("City"), by its attorney, Michael A. Cardozo, Corporation Counsel of the City of New York, alleges upon personal knowledge as to itself and upon information and belief as to all other matters:

## INTRODUCTION

1. This is an action for a declaration that defendants American Motorists Insurance Company ("AMIC"), as successor in interest to Carlisle Insurance Company ("Carlisle"), and Westchester Fire Insurance Company ("WFIC") have a duty to defend and indemnify the City in an action entitled *Ruben Rivera and Olga Rivera v. The City of New York, Diamond Asphalt Corp., Welsbach Electric Corporation, Levi Walton, DCR Trucking and Excavation Inc., Urbitran Associates Engineers P.C., Consolidated Edison Company of New York, Inc. and Mulvihill Electric Co., Inc.*, New York Supreme Court, Bronx County, Index No. 7931/98 (the "*Rivera* Action").

**PARTIES**

2. Plaintiff the City is a municipal corporation organized pursuant to the laws of the State of New York.

3. Defendant AMIC is an insurance company licensed to transact and transacting insurance business in New York, with a principal place of business at 1 Kemper Drive, Long Grove, IL 60049. Upon information and belief, AMIC is a division or member company of Kemper Insurance Companies.

4. Upon information and belief, AMIC is the successor in interest to another division or member company of Kemper Insurance Companies, namely Kemper Indemnity Insurance Company ("Kemper Indemnity"). Kemper Indemnity, in turn, was the successor in interest to Carlisle Insurance Company ("Carlisle"), which is now defunct. Carlisle was transacting insurance business in New York at the time of the events giving rise to the *Rivera* Action and was a company or division of the Markel Corporation ("Markel"), an international property and casualty insurance holding company.

5. As a result of corporate mergers and/or acquisitions, AMIC is the successor in interest to Carlisle.

6. Defendant WFIC is an insurance company licensed to transact and transacting insurance business in New York, with a principal place of business at P.O. Box 1000, 436 Walnut Street, Philadelphia, PA 19106.

**FACTS**

7. In or around July 1993, the City's Department of Transportation ("DOT") entered into a contract with Diamond Asphalt Corporation ("Diamond"), for the "reconstruction of Boston Road from East 163rd Street to Bronx Park South, from Pelham Parkway South to Needham Avenue and from Delvahill Avenue to City Line" (the "Contract"). Under the

2

Contract, Diamond was to perform construction/repair work along various stretches of Boston Road in the Bronx.

8. Diamond was obligated under the Contract to procure a commercial general liability insurance policy (ISO form CG 00 01 11 85 or equivalent) in its own name with the City and various other entities added as additional insureds, with a limit of liability of $2,000,000 per occurrence for injuries to persons or damage to property in connection with its work under the Contract.

9. Pursuant to its obligations under the Contract, Diamond obtained a commercial general liability insurance policy, upon information and belief Policy No. GLP 1001078, that was issued by Carlisle (the "Carlisle Policy").

10. Diamond is a named insured under the Carlisle Policy.

11. The City is an additional insured under the Carlisle Policy.

12. Diamond also obtained an excess and/or umbrella liability insurance policy, upon information and belief Policy No. CUA1027140, that was issued by WFIC (the "WFIC Policy").

13. Diamond is a named insured under the WFIC Policy.

14. The City is an additional insured under the WFIC Policy.

15. On or around November 17, 1996, Ruben Rivera ("Rivera") allegedly was injured while walking in a public thoroughfare at Boston Road between Thwaities Place and Pelham Parkway, in the Bronx, New York, when he was struck by a motor vehicle operated by Levi Walton.

16. On or around February 13, 1998, the City was served with a summons and complaint in the *Rivera* Action.

17. The complaint in the *Rivera* Action ("*Rivera* Complaint" or "Complaint") alleges, *inter alia*, that Rivera was injured while walking in a public thoroughfare at Boston Road between Thwaities Place and Pelham Parkway, in the Bronx, New York on November 17, 1996, when he was struck by a motor vehicle operated by Levi Walton; that the roadway where Rivera was injured was under construction, on account of which a number of defects or deleterious conditions were present, including "raised manhole covers," "inadequate illumination," "lack of lane markings," "lack of barricades, signage, barrels, cones, [or] warnings," and "lack of temporary lighting brightly illuminating the construction area"; that various companies named as defendants were performing work at the accident location, including Diamond, which was excavating and paving the roadway at the accident site; that all of the defendants, including the City and Diamond, "had the obligation to restore the lighting, restore the paving, restore the lane markings, and otherwise put the roadway back into safe condition"; and that on account of defendants' failure to do so, as well as Levi Walton's failure to carefully operate his motor vehicle, Rivera was injured.

18. The *Rivera* Action is within the coverage of the Carlisle Policy.

19. The *Rivera* Action is within the coverage of the WFIC Policy.

20. Upon information and belief, AMIC and/or WFIC have made payments on Diamond's behalf to settle Rivera's claims against Diamond.

21. On or around May 31, 2011, the City entered into a stipulation to settle Rivera's claims against the City in the *Rivera* Action for $100,000.

**AMIC's Liability**

22. On or around February 14, 1997, a Notice of Claim was filed with the New York City Office of the Comptroller ("Comptroller") on behalf of Rivera.

23. By notice dated February 24, 1997, the Comptroller forwarded a copy of Rivera's Notice of Claim to Professional Risk Managers, Diamond's insurance broker. Upon information and belief, Professional Risk Managers forwarded the City's notice to Investors Insurance Group.

24. By fax letter dated March 10, 1997, John Inman of Investors Insurance Group, which upon information and belief was administering claims for and otherwise acting on behalf of Carlisle, responded to the City's February 24, 1997 notice, stating in relevant part that that he had received the City's notice and that "Investors Insurance Group insure Diamond Asphalt, under the above mentioned policy [GLP 1001078]. We will investigate and defend the City of New York and pay any judgment or awards according to the terms and conditions of our policy."

25. By letter dated April 1, 1998, Thomas Sinnott of the New York City Law Department ("Law Department") served notice of the summons and complaint in the *Rivera* Action upon John Inman of Investors Insurance Group, which was administering claims for and otherwise acting on behalf of Carlisle, enclosing a copy of the *Rivera* suit papers and requesting a defense for the City in that action.

26. By letter dated April 8, 1998, Mr. Inman of Investors Insurance Group responded to the Law Department's tender by disclaiming coverage, stating that "Investors Insurance Group provides general liability insurance coverage to Diamond Asphalt Corp. under policy #GLP 1001078. Our investigation into this matter revealed that there will be liability against The City for their own negligence, therefore we will not defending The City in reference to this lawsuit. Enclosed, we are returning the summons and complaint."

27. To date, Carlisle and its successors, including Kemper Indemnity and AMIC, as well as its parents and/or affiliates, such as Investors Insurance Group and Markel Corporation, have failed and refused to defend or indemnify the City in the *Rivera* Action.

28. As a result of AMIC's (and its predecessors' and parents/affiliates') failure to assume the City's defense, the City has been forced to defend itself in the *Rivera* Action through the Law Department, and has incurred attorney's fees and costs in doing so.

29. When an insurance carrier wrongfully refuses to acknowledge its defense obligations to the City, the Law Department charges the carrier $250 an hour for attorney time and $75 an hour for paralegal time to provide such legal services to the City. The Law Department charges the carrier for these services from the moment of notification through the time, if any, when the insurance carrier resumes such defense.

## **WFIC's Liability**

30. Upon information and belief, WFIC has been on notice of the *Rivera* Action and/or the alleged injury underlying that action since approximately February 1997.

31. Upon information and belief, WFIC participated in discussions regarding settlement of Rivera's claim against Diamond.

32. Upon information and belief, WFIC contributed money on behalf of Diamond to settle Rivera's claim against Diamond.

33. The Law Department became aware in January 2011 that the Carlisle Policy may have been exhausted in the course of Carlisle's and/or AMIC's defense and settlement of the *Rivera* Action on behalf of Diamond, consequently triggering excess and/or umbrella coverage under the WFIC Policy for the City in that action.

34. By letter dated February 1, 2011, the Law Department notified WFIC of the summons and complaint in the *Rivera* Action.

35. By fax letter dated March 14, 2011, the Law Department (having received no response to its February 1, 2011 notice) followed up with a second notice and formally requested a defense from WFIC in the *Rivera* Action.

36. To date, WFIC has failed and refused to defend or indemnify the City in the *Rivera* Action.

37. As a result of WFIC's failure and refusal to assume the City's defense, the City has been forced to defend itself in the *Rivera* Action through the Law Department, and has incurred attorney's fees and costs in doing so.

38. When an insurance carrier wrongfully refuses to acknowledge its defense obligations to the City, the New York City Law Department charges the carrier $250 an hour for attorney time and $75 an hour for paralegal time to provide such legal services to the City. The New York City Law Department charges the carrier for these services from the moment of notification through the time, if any, when the insurance carrier resumes such defense.

**FIRST CAUSE OF ACTION**
**(Declaration of Duty to Defend and Indemnify)**

39. The City repeats and realleges paragraphs 1 through 38 as if fully set forth herein.

40. Despite the City's demand that Carlisle defend it in the *Rivera* Action under the Carlisle Policy, Carlisle failed and refused to do so, in breach of its obligations under the Carlisle Policy.

41. Carlisle's, and now AMIC's, failure to defend the City in the *Rivera* Action violates the Carlisle Policy and the law.

42. AMIC has failed and refused to indemnify the City for the City's settlement of Rivera's claims against the City in the *Rivera* Action, in breach of its obligations under the Carlisle Policy.

43. AMIC's failure and refusal to indemnify the City for the City's settlement of Rivera's claims against the City in the *Rivera* Action violates the Carlisle Policy and the law.

44. There is therefore an actual controversy of a justiciable nature between the City and AMIC as to whether the latter has a legal obligation to defend and indemnify the City in the *Rivera* Action under the terms of the Carlisle Policy. A judicial declaration that AMIC has an obligation to defend and indemnify the City is necessary and appropriate at this time because Carlisle's, and now AMIC's, failure to provide the City with a defense in the *Rivera* Action has forced the City to incur costs in defending itself in that action, and because the City has entered into a stipulation to settle Rivera's claims against the City in the *Rivera* Action for $100,000.

## SECOND CAUSE OF ACTION – AMIC
### (Recovery of Costs of Defense)

45. The City repeats and realleges paragraphs 1 through 38 as if fully set forth herein.

46. Beginning no later than the City's February 24, 1997 notice, Carlisle was obligated to defend the City in the *Rivera* Action. As successor in interest to Carlisle, AMIC is now obligated to defend the City in the *Rivera* Action.

47. Despite the City's demand that Carlisle provide the City with a defense to the *Rivera* Action, Carlisle, and now AMIC, have failed and refused to do so.

48. When an insurance carrier has wrongfully refused to acknowledge its defense obligation, the Law Department charges the carrier $250 an hour for attorney time and $75 an hour for paralegal time plus costs and expenses.

49. AMIC accordingly is liable for the City's defense costs in the *Rivera* Action, beginning no later than February 24, 1997, through the time, if any, when AMIC agrees to provide such defense, at a rate of $250 an hour for attorney time and $75 an hour for paralegal time plus costs and expenses, plus interest.

## THIRD CAUSE OF ACTION – AMIC
### (Indemnification)

50. The City repeats and realleges paragraphs 1 through 38 as if fully set forth herein.

51. The *Rivera* Action asserted a covered claim against the City under the Carlisle Policy.

52. On or around May 31, 2011, the City entered into a stipulation to settle Rivera's claims against the City in the *Rivera* Action for $100,000.

53. Under the Carlisle policy, the City is entitled to be indemnified for the amount it pays in settlement of Rivera's claims against the City in the *Rivera* Action, plus interest.

## FOURTH CAUSE OF ACTION - WFIC
### (Declaration of Duty to Defend and Indemnify)

54. The City repeats and realleges paragraphs 1 through 38 as if fully set forth herein.

55. Despite the City's demand that WFIC defend it in the *Rivera* Action under the WFIC Policy, WFIC failed and refused to do so, in breach of its obligations under the WFIC Policy.

56. WFIC's failure to defend the City in the *Rivera* Action violates the WFIC Policy and the law.

57. WFIC has failed and refused to indemnify the City for the City's settlement of Rivera's claims against the City in the *Rivera* Action, in breach of its obligations under the WFIC Policy.

58. WFIC's failure and refusal to indemnify the City for the City's settlement of Rivera's claims against the City in the *Rivera* Action violates the WFIC Policy and the law.

59. There is therefore an actual controversy of a justiciable nature between the City and WFIC as to whether the latter has a legal obligation to defend and indemnify the City in the *Rivera* Action under the terms of the WFIC Policy. A judicial declaration that WFIC has an obligation to defend and indemnify the City is necessary and appropriate at this time because WFIC's failure to provide the City with a defense in the *Rivera* Action has forced the City to incur costs in defending itself in that action, and because the City entered into a stipulation to settle Rivera's claims against the City in the *Rivera* Action for $100,000.

### FIFTH CAUSE OF ACTION – WFIC
### (Recovery of Costs of Defense)

60. The City repeats and realleges paragraphs 1 through 38 as if fully set forth herein.

61. Beginning with its first notice of the *Rivera* Action, WFIC has been obligated to defend the City in the *Rivera* Action.

62. Despite the City's demand that WFIC provide the City with a defense to the *Rivera* Action, WFIC has failed and refused to do so.

63. When an insurance carrier has wrongfully refused to acknowledge its defense obligation, the Law Department charges the carrier $250 an hour for attorney time and $75 an hour for paralegal time plus costs and expenses.

64. WFIC accordingly is liable for the City's defense costs in the *Rivera* Action, from the time of its first notice of the *Rivera* Action through the time, if any, when WFIC agrees to provide such defense, at a rate of $250 an hour for attorney time and $75 an hour for paralegal time plus costs and expenses, plus interest.

### SIXTH CAUSE OF ACTION – WFIC
### (Indemnification)

65. The City repeats and realleges paragraphs 1 through 38 as if fully set forth herein.

66. The *Rivera* Action asserted a covered claim against the City under the WFIC Policy.

67. On or around May 31, 2011, the City entered into a stipulation to settle Rivera's claims against the City in the *Rivera* Action for $100,000.

68. Under the WFIC policy, the City is entitled to be indemnified for the amount it pays in settlement of Rivera's claims against the City in the *Rivera* Action, plus interest.

**WHEREFORE**, the City demands judgment:

(a)  On the First Cause of Action, against AMIC, declaring that it is obligated under the Carlisle Policy and the law to defend and indemnify the City in the *Rivera* Action;

(b)  On the Second Cause of Action, against AMIC, for fees and expenses relating to the City's defense of the *Rivera* Action, at the rate of $250 an hour for attorney time and $75 an hour for paralegal time from February 24, 1997 through the time, if any, when AMIC assumes the City's defense in that action, in an amount to be proven at trial, plus costs and expenses, plus interest;

(c)  On the Third Cause of Action, against AMIC, for indemnification under the Carlisle Policy in the amount the City pays in settlement of Rivera's claims against the City in the *Rivera* Action, plus interest;

(d)  On the Fourth Cause of Action, against WFIC, declaring that it is obligated under the WFIC Policy and the law to defend and indemnify the City in the *Rivera* Action;

(e)  On the Fifth Cause of Action, against WFIC, for fees and expenses relating to the City's defense of the *Rivera* Action, at the rate of $250 an hour for attorney time and $75 an hour for paralegal time from the time of its first notice of the *Rivera* Action through the time, if any, when WFIC assumes the City's defense in that action, in an amount to be proven at trial, plus costs and expenses, plus interest;

(f)  On the Sixth Cause of Action, against WFIC, for indemnification under

the WFIC Policy in the amount the City pays in settlement of Rivera's claims against the City in the *Rivera* Action, plus interest; and

(g)   For such other relief as this Court may deem just and proper.

Dated:   New York, New York
September 21, 2011

                                        MICHAEL A. CARDOZO
                                        Corporation Counsel of the
                                            City of New York
                                        *Attorneys for Plaintiff The City of New York*
                                        100 Church Street, Rm. 20-84
                                        New York, New York 10007
                                        (212) 788-0967
                                        abloom@law.nyc.gov

By: *[signature]*
                                        Aaron M. Bloom (AB 1977)
                                        Assistant Corporation Counsel